IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADHAM MOHAMMED ALI AWAD, ) | |
| ) | |
| *Petitioner*, ) | |
| ) | |
| v. ) | Civil Action No. 05-2379 (JR) |
| ) | |
| GEORGE W. BUSH, *et al.*, ) | |
| ) | |
| *Respondents*. ) | |

**PETITIONER'S OPPOSITION TO THE GOVERNMENT'S MOTION TO REVIEW PRIVILEGED, ATTORNEY-CLIENT MATERIALS SEIZED WITHOUT APPROVAL AND CROSS-MOTION TO SHOW CAUSE WHY THE GOVERNMENT SHOULD NOT BE HELD IN CONTEMPT FOR ITS ILLEGAL AND UNETHICAL ACTIONS**

INTRODUCTION

The government's motion should be denied, and the government held in contempt for participating in the unauthorized seizure of privileged, attorney-client materials belonging to Petitioner Adham Mohammed Ali Awad ("Mr. Awad"). As a fundamental principle and by specific order of this Court, all privileged, attorney-client materials belonging to Mr. Awad are supposed to be secure from such abuses by the government. The government's unauthorized actions are illegal, unethical, and not predicated on any supportable rationale. The failure of the Department of Justice to disclose, much less seek to remedy, its client's illegal and unethical actions for nearly *one month* is deplorable and should be sanctioned.

The government's asserted rationale for the seizure of Mr. Awad's legal materials – the investigation of the deaths of three prisoners on June 10, 2006 – is wholly inadequate and irrelevant to justify abusing the most fundamental privilege underlying the attorney-client relationship. The government fails to mention or even refer to Mr. Awad in its motion. In the

absence of any individualized showing to justify the seizure of Mr. Awad's legal materials, the Court should not and cannot countenance the government's actions. The government's seizure of Mr. Awad's legal materials far outreaches an isolated breach of the attorney-client privilege and instead demonstrates a flagrant effort to break the very backbone of the attorney-client relationship. Against the background of counsel's recent first meetings with our client, counsel fears the government's actions have undermined, if not permanently shattered Mr. Awad's belief, however tenuous from the start, that his communications and relationship with counsel would be safe from the government's reach.

The privilege at issue is too fundamental and, under the unique circumstances of this case, too delicate, for the Court simply to accept the bare assertions of the government. Respondents' belatedly offered rationale for seizing Mr. Awad's legal materials is nothing more than yet another pretext to further disrupt the formation of an attorney-client relationship between Mr. Awad and counsel. The government should be ordered to return immediately all seized legal materials either to Mr. Awad or to counsel and to destroy any photocopies, summaries or notes made regarding these materials. Further, the Court should order the government to show cause why it should not be sanctioned for seizing Mr. Awad's legal materials and subsequently failing to report its actions for nearly one month. The Court also should investigate how the Department of Justice permitted this massive breach of the attorney-client privilege and either sat silent in the face of its clients' malfeasance or actively participated in these abuses.[1]

---

[1] Petitioner submits a proposed order herewith directing Respondents to provide information, under oath by a person with actual knowledge, and subject to cross-examination by habeas counsel, giving the particulars of what has been done with the legal materials seized from Mr. Awad (including who has read these materials, what analyses have been made of these materials, etc.) so that counsel and the Court can assess the need for further measures.

# ARGUMENT

I. **THE GOVERNMENT'S SEIZURE OF MR. AWAD'S LEGAL PAPERS WAS ILLEGAL AND UNETHICAL.**

This Court has ruled that prisoners held at Guantanamo have a right to representation by and access to counsel. This Court also has recognized the fundamental axiom that the attorney-client privilege attaches to communications between prisoners, such as Mr. Awad, and their lawyers, and has gone to great effort to create procedures to protect the confidentiality of attorney-client communications in these cases. On April 11, 2006, this Court entered the Protective Order which permitted counsel to communicate and meet with Mr. Awad. Implicit in the Court's entry of the Protective Order was the recognition that an attorney-client relationship exists between counsel and Mr. Awad. The Court must not now ratify the government's clear violation of this attorney-client relationship and allow it to continue to seize, possess, and examine Mr. Awad's privileged, attorney-client materials.

A. **Mr. Awad's Legal Papers May Not Be Seized And Reviewed Without An Individualized Showing Of Probable Cause.**

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law."[2] "Its purpose is to encourage full and frank communication between attorneys and their client and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client."[3] As this Court has recognized in the context of the Guantanamo litigation, "[t]he privilege that attaches to communications between counsel

---

[2] *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

[3] *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998); *see also Lanza v. State of New York*, 370 U.S. 139, 143-44 (1962) ("[I]t may be assumed that even in a jail, or perhaps especially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection.").

US_EAST.16004627.2                    3

and client has long held an exceptional place in the legal system of the United States."[4] The protection of this privilege is most vital in the context of those detained prior to trial, as Mr. Awad has been, without charges, for nearly five years. "An inmate's need for confidentiality in his communications with attorneys through whom he is attempting to redress his grievances is particularly important."[5] For such prisoners, "contact with an attorney and the opportunity to communicate privately is a vital ingredient to the effective assistance of counsel and access to the courts."[6]

This Court has held in the Guantanamo litigation that the government cannot "unilaterally impose procedures that abrogate the attorney-client relationship and its concomitant attorney-client privilege covering communications between them."[7] The government makes no effort to assert that its actions did not violate the attorney-client privilege. Instead the government flaunts its knowledge that the seized legal materials "will likely include some number of attorney-client communications potentially subject to attorney-client privilege."[8] The legal materials seized from Mr. Awad constitute *only* privileged, attorney-client communications. *See* Souras Decl. ¶¶ 4, 8, 10, 11, 18. The government's seizure of these materials without any reference to or mention of Mr. Awad violates well-

---

[4] *Al Odah*, 346 F. Supp. 2d 1, 10 (D.D.C. 2004).

[5] *Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir. 1974); *see also Johnson-El v. Schoemehl*, 878 F.2d 1043, 1051 (8th Cir. 1989) ("Pretrial detainees have a substantial due process interest in effective communication with their counsel and in access to legal materials. *When this interest is inadequately respected during pre-trial confinement, the ultimate fairness of the eventual trial can be compromised.*") (emphasis added).

[6] *Bach*, 504 F.2d at 1102.

[7] *Al Odah*, 346 F. Supp.2d at 5.

[8] Respondents' Motion at 9.

established case law requiring the government to make a specific, individualized showing that a sufficiently compelling justification exists for invading the attorney-client privilege.[9]

1. **The Government Does Not Address The Seizure Of Mr. Awad's Legal Materials, Much Less Make The Required Individualized Showing To Justify Its Illegal And Unethical Actions**

The government's motion makes no allegations and presents no evidence whatsoever regarding Mr. Awad. In fact, Mr. Awad is not even mentioned or alluded to in the government's motion. The government once again would have the Court believe that the prisoners at Guantanamo are nothing more than an anonymous collection of sworn enemies of the United States, complicit in coordinated acts against our country. Counsel respectfully suggests that the time has long passed for the Court to permit such gross generalizations and sweeping characterizations to satisfy the government's obligation to present individualized evidence regarding Mr. Awad. Mr. Awad stands before this Court as an individual prepared to defend himself against whatever charges the government may one day decide to assert against him. Mr. Awad must be treated as an individual in all matters relating to this case, including the government's present motion. The government cannot be permitted flagrantly to violate Mr. Awad's attorney-client relationship with counsel solely on the basis of the sweeping and generalized allegations in its motion.

---

[9] *In re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997); *see also Doe v. United States*, No. 03-6145, 2003 WL 22879314 (2d Cir. Dec. 4, 2003) (reversing contempt order where government failed to meet burden of showing that crime-fraud exception applied); *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995) (requiring showing or probable cause to believe that crime or fraud was attempted or committed and that attorney-client communications were used to further that crime or fraud); *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986) (reversing civil contempt order because government failed to satisfy burden of showing that crime-fraud exception applied to documents corporation failed to produce); *United States v. Stewart*, No. CR 396 JGK, 2002 WL 1300059 (S.D.N.Y. June 11, 2002) (seizure of materials likely to include privileged materials must be supported by probable cause or warrant and conducted under appropriate screening methods).

US_EAST 160044627.2           5

## 2. It Is Impossible For the Government To Make Any Showing Sufficient To Justify Its Seizure of Mr. Awad's Legal Materials

The government makes no specific reference to Mr. Awad because there is no possible justification for seizing his privileged legal materials under the rationale offered in its motion. The alleged suicide notes, as well as the additional documents referred to in the government's motion, but not submitted for either the Court's or counsel's review, simply cannot be relevant to Mr. Awad. First, upon information and belief, Mr. Awad was not kept in Camp 1, where the government asserts the three prisoners died, either at the time of the deaths or in recent months. *See* Souras Decl. ¶ 6. Moreover, prisoners at Guantanamo are not permitted to communicate freely with each other, so it is inconceivable that Mr. Awad had knowledge of these deaths before they occurred. Indeed, the government does not allege that Mr. Awad had knowledge of the prisoner deaths before they occurred or participated in any way in these deaths or ever has participated in any concerted activities with other detainees.

Second, counsel has sent to Mr. Awad exactly three privileged, legal communications: 2 one-page letters and 1 handwritten note (written in English, with Arabic translations provided).[10] *See* Souras Decl. ¶¶ 4, 10, 11. Pursuant to the terms of the Protective Order, all of these communications were submitted for privilege review prior to delivery to Mr. Awad, and none of these communications contained any enclosures or attachments. Other than these 3 legal communications, counsel has never sent to Mr. Awad any papers or materials, much less JTF-Guantanamo emails,[11] documents stamped "FOUO" or with a marked-out "SECRET"

---

[10] To counsel's knowledge, the government has delivered only 1 of these privileged communications to Mr. Awad. Mr. Awad has informed counsel that he did not receive a privileged handwritten note submitted to the military by counsel on June 13, 2006 for delivery to him. *See* Souras Decl. ¶ 12. Counsel does not know if the government has delivered the second privileged letter to Mr. Awad. *See* Souras Decl. ¶ 12.

[11] The government offers no explanation for how such an email was released by the JTF-Guantanamo staff to anyone beyond that staff, much less how it came into prisoner's possession. Based on counsel's observations from a recent visit to Guantanamo, however, it is clear that prisoners are placed in proximity to papers originating from the

US_EAST:160044627.2                                6

stamp, instructions regarding "knot-tying," or blank paper marked "attorney-client privileged." *See* Souras Decl. ¶¶ 4, 8, 10, 11, 18. Counsel has never seen any such documents in Mr. Awad's possession or received any information from Mr. Awad that would lead counsel to believe that he could possibly possess or be aware of any such documents. It is clear that Mr. Awad's privileged communications with counsel could not have been the source of the papers referenced in the government's motion. Moreover, the government does not suggest that the documents at issue were provided by Mr. Awad.

The government's nonsensical rationale for seizing Mr. Awad's legal papers is readily apparent when the handful of documents the government cites as its basis for seizing privileged materials is examined in light of Mr. Awad's circumstances. The Court should not permit counsel's attorney-client relationship with Mr. Awad to be eviscerated because the government refuses to abide by the norms of legal ethics, the Court's earlier holdings regarding prisoners' right to counsel or prevailing law. Contrary to the government's sweeping assertions, counsel has hardly used, much less abused, the legal mail system and has given *no* materials to Mr. Awad during client visits. Based on these facts and the government's failure to mention, much less make an individualized showing as to, Mr. Awad, the government's motion should be denied. No seizure or review of Mr. Awad's legal materials by anyone – the military, the government or an intermediate review team – should be permitted.

## II. THE GOVERNMENT SHOULD BE SANCTIONED FOR SEIZING AND REVIEWING MR. AWAD'S LEGAL PAPERS WITHOUT NOTICE OR APPROVAL.

On June 10, 2006, the military reported that three prisoners at Guantanamo had been found dead in their cells, allegedly after taking their own lives. According to the declarations

---

JTF-Guantanamo staff. *See* Souras Decl. ¶ 17. Any potentially haphazard handling of JTF-Guantanamo papers by its own staff cannot be a rationale to "blame the lawyers" and invade the attorney-client privilege.

of Admiral Harris and Special Agent Kisthardt, the Naval Criminal Investigative Service (NCIS) initiated an investigation to determine "the manner and cause of death" of the three prisoners.[12] No findings of this investigation have been made public. Nearly *one month* later, the government disclosed that between June 10 and June 14, purportedly as part of the NCIS investigation, over a half-ton of privileged, attorney-client communications between prisoners and their lawyers were seized and portions of these document examined.[13] The Court should order the government to show cause why it should not be held in contempt and sanctioned for its illegal and unethical seizure and review of legal materials.

The facts relating to Mr. Awad now reveal that his legal materials were seized by the military on the evening of June 13 or on June 14. Counsel met with Mr. Awad for the first time on June 13, and he had possession of his legal materials. *See* Souras Decl. ¶ 7. The next day, one hour before counsel's scheduled meeting with Mr. Awad, however, the military abruptly cancelled all client visits. *See* Souras Decl. ¶ 9. After seeking intervention from Magistrate Judge Kay, counsel was able to learn that the meeting with Mr. Awad had been cancelled at the NCIS' request in connection with its investigation. *See Id.* Counsel was not permitted to personally communicate to Mr. Awad that the military had cancelled our scheduled meeting. *See* Souras Decl. ¶¶ 9-10. Based on the representations of Admiral Harris and Special Agent Kisthardt that legal mail was seized between June 10 and June 14, it is now apparent that the military entered Mr. Awad's cell and seized his privileged, attorney-client materials hours after counsel met with Mr. Awad for the first time on June 13. The military's summary cancellation of counsel's second day of meetings with Mr. Awad prevented counsel from discovering for several weeks that his legal materials had been seized. Moreover, the seizure of Mr. Awad's legal

---

[12] Harris Decl. ¶ 2; Kisthardt Decl. ¶ 2.

[13] Kisthardt Decl. ¶¶ 2-5.

materials, taking place shortly after counsel's first meeting with Mr. Awad, had a negative impact on Mr. Awad's perception of the legal process concerning his case and the confidentiality of his communications with counsel. *See* Souras Decl. ¶ 14.

Of all the government's interferences with Mr. Awad's attorney-client relationship, the seizure and examination of his legal materials is certainly the most egregious. However, it is far from the government's only attempt to stymie and otherwise frustrate the development of counsel's attorney-client relationship with Mr. Awad. *See* Souras Decl. ¶¶ 15-16. Rather, the government's actions here follow a pattern of seeking to subvert the legal process and decimate the formation of an attorney-client relationship between Mr. Awad and counsel.

Having belatedly disclosed its illegal seizure and examination, the government now asks the Court to condone its actions and permit it to retain the seized materials and examine them even more closely. The government sought judicial sanction for its actions only after habeas counsel, informed of the government's actions by their clients, began to seek relief from the Court.[14] Now that its illegal actions have been exposed, the government seeks to preempt further requests for relief by obtaining blanket *post hoc* court approval of its actions.

The fact that Mr. Awad's legal papers were seized at least 3 days after the prisoner deaths and in the middle of his scheduled visit with counsel prove that no exigency required the government to act without seeking the Court's approval and notifying counsel. At the very least, a conference call with counsel and the Emergency Judge or Magistrate Judge Kay could have been arranged. *See* LCvR 40.1(c), 65.1, 57.8. The Justice Department clearly was apprised of events unfolding at Guantanamo from June 10-14 relating to the prisoner deaths, and, moreover, had an ethical duty to ensure that the military's actions during this time did not violate the law or

---

[14] Motion to Modify Stay to Direct Respondents to Return Impounded Privileged Legal Material and for Other Relief, *Abdullah v. Bush*, 05-00023 (RWR) (filed July 5, 2006). The government states that its instant motion is an opposition to the *Abdullah* motion. U.S. Motion at 1, n.1.

this Court's directives. The Justice Department either approved the military seizure of the privileged materials without notice to or approval by the Court or failed to prevent it. The Department's failure to disclose the seizure of Mr. Awad's legal materials until after the *Abdullah* motion forced its hand suggests that the Department was complicit and actively participated in this massive breach of the attorney-client privilege. The Court should find Respondents in contempt, sanction the government for its conduct, and refer the matter to the Justice Department's Office of Professional Responsibility, as urged by the American Bar Association.[15]

## CONCLUSION

For the preceding reasons, the government's motion should be denied, Mr. Awad's legal papers should be returned immediately without being examined, and the government should be sanctioned by the Court for its knowledge and/or participation in its clients' illegal and unethical acts.

Dated: July 21, 2006

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Panayiota M. Soufis*

Panayiota G. Soufas (pursuant to LCvR 83.2(g))
Washington Harbour
3050 K Street, N.W., Suite 200
Washington, D.C. 20007
(202) 339-8400
(202) 339-8500 (fax)

Counsel for Petitioner

---

[15] *See* Letter dated July 11, 2006, from Michael S. Greco, President, American Bar Association to Senators Arlen Specter and Patrick Leahy (Exhibit B).

## CERTIFICATE OF SERVICE

       I certify that on this 27th day of July, 2006, I served the foregoing on the counsel listed below by this Court's Electronic Case Filing ("ECF") system. An original and two copies of the foregoing previously were filed with the Court Security Officer on July 21, 2006:

       Preeya M. Noronha, Esquire
       Terry M. Henry, Esquire
       United States Department of Justice
       Civil Division, Federal Programs Branch
       20 Massachusetts Avenue, N.W., Room 7144
       Washington, D.C. 20530
       Tel: (202) 514-4107
       Fax: (202) 616-8470

*Counsel for Respondents*

       /s/ Panayiota J. Souras
       Panayiota G. Souras

CLEARED FOR PUBLIC FILING BY CSO; NOTICE OF FILING FILED JULY 21, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADHAM MOHAMMED ALI AWAD ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 04-CV-2379 (JR) |
| ) | |
| GEORGE W. BUSH, et al., ) | |
| ) | |
| Respondents. ) | |
| ) | |

## [PROPOSED] ORDER

Having considered Respondents' motion to examine privileged communications (Doc. 41) and Petitioner's Opposition and Motion to Show Cause, it is hereby –

ORDERED, that the Government's motion is DENIED and Petitioner's motion is GRANTED; and it is further

ORDERED, that Respondents shall show cause by July 31, 2006 why they should not be held in contempt and sanctioned for seizing and reviewing Petitioner's privileged, legal papers without notice to and approval by the Court and without notice to counsel, and for failing to report its actions to the Court and counsel until nearly one month after the fact; and it is further

ORDERED, that in answering the Order to Show Cause, Respondents shall describe in detail all communications between any agency of the Department of Defense and any agency of the Department of Justice regarding the seizure and review of Petitioner's privileged, legal papers; and it is further

ORDERED, that Respondents shall deliver all of Petitioner's privileged, legal papers to counsel not later than July 21, 2006; destroy, and certify that they have destroyed, all copies, summaries, descriptions, or analyses of such papers; and neither seize nor review any other privileged, legal papers of Petitioner; and it is further

ORDERED, that the Government shall provide information, under oath by a person with actual knowledge, giving the particulars of what has been done with the privileged, legal papers (including who has read them, what analysis has been made, etc.) so that counsel and the Court can assess the need for further measures.

_____
United States District Judge