# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ADHAM MOHAMMED ALI AWAD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-2379 (JR) |
| ) | |
| GEORGE W. BUSH, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## DECLARATION OF PANAYIOTA G. SOURAS

1. I, Panayiota G. Souras, make this declaration based on personal knowledge, except where otherwise stated. I represent Petitioner Adham Mohammed Ali Awad in this matter.

2. On April 4, 2006, I completed the security clearance procedures required for this matter. On April 11, 2006, this Court entered the Protective Order in this matter. Only after April 11, 2006 was I able to send legal mail to Mr. Awad and to schedule a trip to Guantanamo to meet with him.

3. Accompanied by Michael W. Trinh, also an associate with Orrick, Herrington & Sutcliffe, LLP, and an interpreter, I met with Mr. Awad at Guantanamo on June 13, 2006 and July 6, 2006. I am informed that both of these individuals have completed the security clearance procedures required for this matter.

4. Prior to our June 13, 2006 meeting, I sent a one page letter dated April 28, 2006 to Mr. Awad. This letter was written in English and an Arabic translation was provided. No materials, including publications, reports, legal papers, or blank paper, were enclosed with this

letter. Pursuant to the legal mail procedures established in these proceedings, I caused this letter to be forwarded to the Habeas Privilege Team at the Department of Justice for review and delivery to Mr. Awad at Guantanamo. This letter was printed on law firm letterhead and clearly identified as an attorney-client communication. At the top of the letter the phrase "ATTORNEY-CLIENT PRIVILEGED AND CONFIDENTIAL" was printed in bold and all caps. The letter was clearly identified as a privileged, legal communication to Mr. Awad in my cover letter to the Justice Department and on envelopes provided to the Habeas Privilege Team to enclose the reviewed letter prior to its delivery to Guantanamo.

5. During our June 13, 2006 meeting with Mr. Awad, he informed me that he had received the April 28, 2006 letter. He informed me that the letter had arrived in an envelope with a broken seal.

6. During our June 13, 2006 meeting with Mr. Awad, he informed me that most recently he had been kept in Camps 2 and 3.

7. During our June 13, 2006 meeting with Mr. Awad, he informed me that he had a plastic bin that contained his possessions and showed me this bin, but did not show me its contents.

8. After my June 13, 2006 meeting with Mr. Awad no materials, including but not limited to publications, reports, legal papers, or blank paper, were left with Mr. Awad. I did not see any documents in Mr. Awad's possession, and Mr. Awad did not disclose any information that would lead me to believe he possessed any documents other than, potentially, the April 28, 2006 letter I had sent to him.

9. We received clearance from Guantanamo to meet with Mr. Awad on June 13 - June 14, 2006. At the conclusion of our meeting on June 13, I represented to Mr. Awad that we

would return the morning of June 14 to continue our meeting. Approximately one hour before our June 14 meeting was scheduled to begin, we were told by the military that no client meetings would be permitted. Later that day, in a telephonic hearing before Magistrate Judge Kay, the Department of Justice stated that our meeting with Mr. Awad had been cancelled due to the investigation of three prisoner deaths by the NCIS.

10. I was informed that I could not communicate with Mr. Awad on June 14, 2006, but was permitted to write a note to Mr. Awad explaining that our meeting for that day had been cancelled. I was told by the military that this note would be delivered to Mr. Awad. I handwrote a note to Mr. Awad, and our interpreter handwrote an Arabic translation. This note was clearly designated as an attorney-client communication and was placed in an envelope clearly labeled to indicate that an attorney-client communication was enclosed. The envelope was sealed in my presence and left with the military at Guantanamo on June 13, 2006 for delivery to Mr. Awad.

11. Prior to our July 6, 2006 meeting, I sent a one page letter dated June 20, 2006 to Mr. Awad. This letter was written in English and an Arabic translation was provided. No materials, including publications, reports, legal papers, or blank paper, were enclosed with this letter. Pursuant to the legal mail procedures established in these proceedings, I caused this letter to be forwarded to the Habeas Privilege Team at the Department of Justice for review and delivery to Mr. Awad at Guantanamo. This letter was printed on law firm letterhead and clearly identified as an attorney-client communication. At the top of the letter the phrase "ATTORNEY-CLIENT COMMUNICATION PRIVILEGED AND CONFIDENTIAL" was printed in bold and all caps. The letter was clearly identified as a privileged, legal communication to Mr. Awad in my cover letter to the Justice Department and on envelopes provided to the Habeas Privilege Team to enclose the reviewed letter prior to its delivery to Guantanamo.

12. During our July 6, 2006 meeting with Mr. Awad, he informed me that he had not received my June 13, 2006 note explaining that our meeting with him had been cancelled. *See* ¶ 10. He also informed us that he had not received our letter dated June 20, 2006. *See* ¶ 11.

13. During our July 6, 2006 meeting with Mr. Awad, he informed us that after his meeting with us on June 13, 2006, his plastic bin containing his possessions was taken from him by the military.

14. During our July 6, 2006 meeting with Mr. Awad, he expressed reservations concerning the legal process governing this proceeding and the confidentiality of his communications with us.

15. During the afternoon session of our July 6, 2006 meeting with Mr. Awad, the military entered our meeting room unannounced on four separate occasions. These interruptions disrupted our meeting with Mr. Awad and compromised the confidentiality of our discussion.

16. On three separate occasions, I submitted photographs of Mr. Awad's family for review and clearance by the government so that I could share these photographs with Mr. Awad while meeting with him. The photographs were submitted for the first time on May 10, 2006. On the day of my June 13, 2006 meeting with Mr. Awad I was told by the Department of Justice that the photographs had been sent to Guantanamo for review, however the military at Guantanamo contradicted this, telling me that the photographs had not been received. Despite my requests, the military was unable to clear a single family photograph for me to share with Mr. Awad during the course of the entire day of our June 13, 2006 meeting. I was told by the Department of Justice on June 29, 2006 that the military had informed the Department that the family photographs had been cleared and provided to Mr. Awad. During our July 6, 2006 meeting with Mr. Awad he informed me that he had not been provided with any photographs,

and I was informed by the military that the photographs still had not been submitted for clearance. Despite my repeated requests, during the course of the day of our July 6, 2006 meeting, the military cleared only 5 of 12 family photographs that I had submitted for clearance.

17. During our July 6, 2006 meeting with Mr. Awad, I observed that one or more clipboards were hanging from the wall in close proximity to Mr. Awad and to his cell. It appeared that multiple pages of pre-printed paper were attached to the clipboard(s). I did not examine either the clipboards or the papers attached thereto.

18. After my July 6, 2006 meeting with Mr. Awad no materials, including but not limited to publications, reports, legal papers, or blank paper, were left with Mr. Awad.

I declare under the penalties of perjury that the foregoing is true and correct.

Executed on July 21, 2006

_____
Panayiota G. Souras

US_EAST:160044628.1                                5