IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADHAM MOHAMMED ALI AWAD, )<br>)<br>*Petitioner*, )<br>)<br>v. )<br>)<br>GEORGE W. BUSH, *et al.*, )<br>)<br>*Respondents*. )<br>) | Civil Action No. 05-2379 (JR) |

**MOTION TO LIFT THE STAY AND TO COMPEL RESPONDENTS TO PROVIDE FACTUAL RETURNS, TO PROVIDE COUNSEL ACCESS TO PETITIONER'S MEDICAL RECORDS, AND TO PROVIDE PETITIONER WITH INDEPENDENT PHYSICAL AND MENTAL HEALTH EXAMINATIONS**

## INTRODUCTION

Petitioner Adham Mohammed Ali Awad ("Petitioner" or "Awad") moves this Court to issue an order: (1) requiring Respondents to explain in writing why they are continuing to detain him in the Guantanamo Bay detention facility, including but not limited to, the unredacted so-called "factual returns" which resulted from hearings regarding Petitioner before the Combatant Status Review Tribunal ("CSRT") within 10 business days, or on a date certain within a reasonable time after entry of the Court's order; (2) lifting the stay that was entered in this case by order dated January 11, 2006; (3) providing counsel with access to Petitioner's medical records within 10 business days following entry of the Court's order; and (4) granting Petitioner an independent physical examination and independent mental health examination.[1]

---

[1] In accordance with the local rules, counsel for Petitioner asked Respondents for consent to the relief requested herein, but consent was denied.

US_EAST:160044627.4

## INTRODUCTION

The need for this relief is obvious. Petitioner is a twenty-two year old man from a small village at the fringe of Aden, the second largest city in Yemen. Little is known of him, for the Government has never provided a factual return. Counsel access to Awad was denied until April 2006, when the Court entered the protective order governing attorney access to clients detained at Guantanamo over the Respondents' vigorous objections. What is known is that Mr. Awad has been imprisoned in Guantanamo for more than four years, and that almost a year has passed since he asked for a hearing. During that time he has had no visitors, other than his lawyers on two occasions. His first visit with his lawyers was abruptly and prematurely terminated with no explanation provided to him or his counsel. He has not heard the voice of a family member, read a magazine or a newspaper, cooked a meal, grown a flower, talked on a telephone, listened to music, or walked in the open air. He has not been touched except with violence or a rubber glove. For every minute of every hour of more than a thousand days, armed guards have watched him. They watch him eat, they watch him shower, they watch him defecate. They refer to him, if at all, by a number.

Like most Guantánamo prisoners, Awad has been branded an "enemy combatant." This does not mean he is a lawful or unlawful combatant under the Geneva Conventions and well-received notions in the Law of War, *see Hamdi v. Rumsfeld*, 542 U.S. 507, 518-22 (2004),[2] but only that the Executive asserts that he fits under a broad definition of "enemy combatant" concocted days after *Hamdi* was decided. This classification, and the accompanying isolation and degradation, has predictably caused detainees to despair. The mental and physical health of Awad also may be at a breaking point. This was brought home to counsel on their second and

---

[2] "[T]he basis asserted for detention by the military is that Hamdi was carrying a weapon against American troops on a foreign battlefield; that is, that he was an enemy combatant. The legal category of enemy combatant has not been elaborated upon in great detail. The permissible bounds of the category will be defined by the lower courts as subsequent cases are presented to them." *Hamdi*, 542 U.S. at 522 n.1.

most recent visit to Petitioner on July 6, when Awad exhibited signs of someone under the duress of long-term isolation and imprisonment without any contact to the outside world. In addition, Awad desperately needs a properly fitted artificial limb for one of his legs that has been amputated since he has been at Guantanamo. He also suffers from severe back and joint problems despite his young age. He has unresolved eye problems. All of this continues without his meaningful access to the courts.

As the Supreme Court has made clear in its decisions in *Rasul v. Bush* and *Hamdan v. Rumsfeld*, the prisoners in custody in Guantanamo are individual men with individual rights. Viewing Awad as an individual – the capacity in which he stands before this Court – it is inescapable that the fundamental relief he seeks finally to be able to prosecute his habeas corpus petition, and to ensure his own physical and mental well-being, should be granted.

## STATEMENT OF FACTS

On December 12, 2005, Petitioner, by his attorneys, filed a Petition for Writ of Habeas Corpus (the "Petition") in this Court. The Petition contests both the fact of Awad's incarceration as well as his inhumane treatment in violation of the Constitution and laws of the United States, the Uniform Code of Military Justice, specified treaties to which the United States is a party, and various principles of international law, as set forth more fully in the Petition. The original petition in this case was served on the United States Attorney on December 12, 2005. Service also was effected on the same day through certified mail, pursuant to Fed. R. Civ. P. 4(i)(1)(B), on the United States Attorney General. Trial Attorney Andrew I. Warden of the Federal Programs Branch of the United States Department of Justice's Civil Division, who is coordinating all of the parallel Guantanamo Bay cases for the Respondents, was sent an

electronic PDF copy of the Petition on the same day. Each Respondent also was served individually by U.S. certified mail.

Pursuant to 28 U.S.C. § 2243, the writ or order to show cause "shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed." No return has yet been filed. Instead of filing a return, on December 22, 2005, Respondents filed a "generic" motion to stay proceedings in this case pending resolution of all appeals in *Khalid v. Bush, Boumediene v. Bush*, Nos. 04-CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), *appeals docketed*, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and *In re Guantanamo Detainee Cases*, No. 02-CV-0299, *et al.*, 355 F. Supp. 443 (D.D.C. 2005), *appeal on petition for interlocutory appeal*, No. 05-5064 (D.C. Cir. Mar. 10, 2005) (collectively, the "Appeals"). Petitioner opposed this motion, arguing that the "stay would bar activities that stays entered in similar cases have left unfettered, thereby seriously frustrating ... counsel's efforts to develop this case and prepare for consultations with his client." (Dkt. # 7 at 1).

Specifically, Petitioner requested that as a condition of the stay, Respondents should be required to file a timely return. (Dkt. # 7 at 1). The Court did not specifically address this request for relief. Rather, it granted Respondents' motion for a stay and held that "the stay will apply to all proceedings applicable to the petitioner, including without limitation his release, repatriation, or rendition." (Dkt. # 9 at 1). In their motion papers, Respondents proposed that the Court enter the protective order governing, among other things, counsel access. However, the Court's stay order was silent in this respect as well.

Counsel for Petitioner applied for and received security clearances, a prerequisite for any privileged or in-person communications with clients detained at Guantanamo. On March 10, 2006, Petitioner's counsel filed a motion seeking the entry of a protective order, which is also a

prerequisite for privileged communications with Guantanamo detainees. Respondents reversed their earlier position articulated in their motion for a stay, and argued in opposition that the Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, 119 Stat. 2860 (2005), deprived the Court of jurisdiction over the Petition. On April 11, 2006, a protective order was entered "to permit counsel access to petitioner." (Minute Order, Apr. 11, 2006). Since that time, counsel has made two trips to Guantanamo to visit Petitioner. The first trip, scheduled for June 13 and June 14, was terminated prematurely by the Department of Defense, and counsel was barred from communicating with Awad on June 14. Awad was never told why he could not visit with his lawyers that day, and counsel did not learn of the purported reason until seeking court intervention from Guantanamo that same day. Counsel visited with Awad again on July 6. At all times, counsel has been without any information regarding why Petitioner is being detained at Guantanamo.

On information and belief, Respondents' agents have interrogated Petitioner on numerous occasions and are well aware of the purported reasons why Awad is being imprisoned. Respondents have acknowledged that the Department of Defense completed so-called "military tribunal" hearings at which each detainee's "enemy combatant" status and their detention generally were reviewed. *See* "U.S. Says 3 at Guantanamo Not Enemy Combatants," *Reuters*, Feb. 3, 2005 ("The status hearings before panels of three military officers were finished at Guantanamo before [Judge] Green ruled" on January 31, 2005, Pentagon Spokesman Lt. Cmdr. Daryl Borgquist is quoted as saying, and that "It's a matter of processing the paperwork now because the tribunals have all occurred.").

## ARGUMENT

I. **RESPONDENTS SHOULD BE ORDERED FORTHWITH TO ISSUE THE FACTUAL RETURN.**

Pursuant to 28 U.S.C. § 2443, "a court ... entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." Further, Respondents have agreed that "§ 2241 and its companion provisions [including § 2243] provide at least a skeletal outline of the procedure to be afforded a petitioner in a federal habeas review." *Hamdi*, 542 U.S. at 522.

Respondents generally have made two arguments regarding why they should not be ordered to produce a factual return. Both of these arguments fail as a matter of law. First, they contend that the Court lacks jurisdiction to order the relief that Petitioner requests because of the DTA. This argument always bordered on the frivolous, and now certainly lacks any merit whatsoever in light of the Supreme Court's decision in *Hamdan v. Rumsfeld*, 548 U.S. ___, 2006 WL 1764793, at **11-16 (U.S. June 29, 2006). There, the Supreme Court explicitly rejected Respondents' contention that the DTA has the effect of repealing this Court's jurisdiction over Petitioner's habeas claims. In *Hamdan*, as in this case, the petition was pending prior to the enactment of the Act on December 30, 2005. The Supreme Court squarely held "that section 1005(e)(1) does not strip federal courts' jurisdiction over cases pending on the date of the [Act's] enactment. Id. at *16 n.15. District court decisions following *Hamdan* have confirmed this holding. *See, e.g., Hamoud v. Bush*, No. 05-1894, 2006 WL 1876947, at *1 n.1 (D.D.C. July 5, 2006) ("[o]ne of the disputed matters on appeal before the District of Columbia Circuit has been resolved by ... *Hamdan* ... where the Court made clear that this court retains jurisdiction over this habeas corpus petition.") (citations omitted). Awad and the petitioner in *Hamoud* are similarly

situated in this respect. Thus, it is undisputed that the DTA is no bar to the Court ordering Respondents to issue a factual return.

Second, Respondents have argued that they should not be ordered to produce the factual return until the Appeals are decided. However, the fact that certain matters relevant to this case also are at issue in the Appeals should not excuse Respondents from filing a return. Indeed, consistent with the Court's entry of the protective order in this case, which allowed counsel to contact Petitioner for the first time, is the fact that the relief requested here is essential if Petitioner is to have meaningful assistance of counsel, including having his counsel review the return so that they can develop his case and prepare for further consultations. To date, counsel's visits with Petitioner have been artificial principally because no discussion could take place about the reasons for Awad's confinement because counsel has no information regarding why Awad has been confined for over four years. *See also Hamdi*, 542 U.S. at 539 (noting that alleged enemy combatant "unquestionably has the right to access to counsel in connection with the proceedings on remand"). Against this background, courts recently have continued to order Respondents to produce the factual return in these cases. *See, e.g., Said v. Bush*, 05-CV-2384 (RWR) (dkt. No. 24) (May 23, 2006) ("Because the parties agree that the detainees are entitled to a review of their detention by a court, and because there is no reason to conclude that detainees would be denied counsel for such a review or that counsel would be denied access to facts relevant to that review, petitioner's request for an order directing respondents to file factual returns will be granted"). The same result should follow here.

## II. THE STAY SHOULD BE LIFTED IN ITS ENTIRETY

The Court entered a stay in this proceeding on January 1, 2006. The continuance of the stay at this time plainly violates the habeas statute and the clear mandate of *Rasul*. Petitioner therefore requests an immediate and full lifting of the stay.[3]

The pendency of certain potentially related issues in the Appeals in no way justifies the continuance of the stay in this proceeding. In deciding whether to grant a stay pending resolution of an appeal in another case, a court "must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). The proponent of a stay must "make out a clear case of hardship or inequity in being required to go forward." *Id.* at 255. Respondents have failed to establish any element of hardship in moving forward in this proceeding. In addition, the Supreme Court has made clear that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* at 255. *See also Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971) (holding that requirement to show need of stay as well as balanced finding that need overrides injury caused by stay "is of particular importance where the claim being stayed involves a not insubstantial claim of present and continuing infringement of constitutional rights.").

It is undisputed that the relief sought by Awad in this habeas proceeding -- including a prompt return, an immediate hearing, and a summary disposition -- is so vital and essential that his petition must be heard and decided promptly. 28 U.S.C. §§ 2241, 2243. Thus, in this case any stay of Awad's habeas proceeding must be extremely circumscribed and must now be lifted by the court. *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) ("[H]abeas proceedings implicate

---

[3] Stays pending in similarly situated detainee cases recently have been lifted. *See, e.g., Al-Asadi v. Bush*, No. 05-2197 (HHK) (Sept. 11, 2006); *Zakirjan v. Bush*, No. 05-2053 (HHK) (Aug. 18, 2006).

special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy."); *Ruby v. United States*, 341 F.2d 585, 587 (9th Cir. 1965) ("The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and received prompt action from him within the four corners of the application. . . . One who seeks to invoke the extraordinary, summary and emergency relief of habeas corpus must be content to have his petition or application treated as just that and not something else.").

By virtue of the elementary and emergency relief sought by a habeas proceeding, the effect of a stay in any such proceeding is substantive. So grievous is the harm imposed by staying a habeas proceeding that Congress has limited the right to impair habeas corpus in the Constitution under the Suspension Clause. U.S. CONST. art. I, § 9, Cl. 2. See infra, p. 10.

The decision in *Yong* is uniquely applicable to Awad's current position. The Ninth Circuit held in *Yong* that the entry of a lengthy and indefinite stay in a habeas case pending an appeal in a similar case is unlawful. *Yong*, 208 F.3d at 1120-21 ("The stay . . . placed a significant burden on Yong by delaying, potentially for years, any progress on his petition. Consequently, although considerations of judicial economy are appropriate, they cannot justify the indefinite, and potentially lengthy, stay imposed here."). Recognizing that the Writ is intended to be a "swift" and imperative remedy in all cases of illegal restraint of confinement," *id.* at 1120 (internal quotations and citations omitted), the Ninth Circuit vacated the five month old stay order entered by the district court pending resolution of similar issues on appeal in a different case, and remanded the case for further proceedings. *Id.* at 1121. Here, the habeas proceedings filed by Guantanamo detainees have been stayed for almost two years, and Awad's habeas proceeding has been stayed for over nine months and there is no indication that the stay will expire in the foreseeable future unless the court vacates the stay at this time.

The courts are in complete accord that the need for a prompt hearing is never greater than where a petitioner has been afforded no judicial review and seeks relief under the Great Writ of habeas corpus. *Rasul*, 542 U.S. at 673-75; *INS v. St. Cyr*, 533 U.S. 289, 301 (2001); *Johnson v. Rogers*, 917 F.2d 1283, 1284 (9th Cir. 1990) (recognizing that if delay in deciding a habeas petition, absent good reason, were routinely permissible, "the function of the Great Writ would be eviscerated."); *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978) ("The writ of habeas corpus, challenging the illegality of detention is reduced to a sham if trial courts do not act within a reasonable time."); *Cross v. Harris*, 418 F.2d 1095, 1105 n.64 (D.C. Cir. 1969) ("This is a habeas corpus proceeding, and thus particularly inappropriate for any delay.").

### B. THE STAY MUST BE LIFTED BECAUSE IT CONTRAVENES THE SUSPENSION CLAUSE

Since January 2005, when Judge Green entered the first stay order, see *In re Guantanamo Detainee Cases*, 02-cv-0299, et al., Order Granting in Part and Denying in Part Resp'ts' Mo. for Certification of Jan. 31, 2005 Orders and for Stay (Feb. 3, 2005) (dkt. no. 162), there has not been a single hearing on the merits of a petitioner's claims in any habeas proceeding filed by a Guantanamo detainee. The continued stay of these proceedings is impermissible for the additional reason that such stays violate the Suspension Clause of the Constitution.

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2. It applies to habeas petitions brought by aliens held within the territorial jurisdiction of the United States. *St. Cyr*, 533 U.S. at 290, 300 (revoking a deportable aliens' habeas rights would raise "substantial constitutional questions" under the Suspension Clause); *Ex parte Yerger*, 75 U.S. 85, 96 (1986) (Suspension Clause "absolutely prohibits the suspension of the writ, except under extraordinary exigencies"). The United States exercises

"complete jurisdiction and control" over Guantanamo, and the detainees imprisoned therein are "within the territorial jurisdiction of the United States." *Rasul*, 542 U.S. at 480.

Although the Suspension Clause is a limit on the power of Congress, not the Judicial Branch, *per se*, it restricts the courts from construing acts of Congress in a manner that would constitute a suspension. *St. Cyr*, 533 U.S. at 300. The stay contravenes this restriction, as it embodies an impermissible construction of the Habeas Corpus Act itself. That act provides that "[w]hen the writ or order is returned *a day shall be set for hearing, not more than five days after the return* unless for good cause additional time is allowed," and directs that the Court "*shall summarily hear* and determine the facts, *and dispose of* the matter as law and justice require." 28 U.S.C. § 2243 (emphasis added). Even granting the court substantially greater flexibility than the statutory limit of five days, the statutory time provisions cannot be construed in a manner that the Suspension Clause itself cannot bear.

Yet this is precisely what has been done. Awad has been accorded no judicial review and no judicial process by virtue of his habeas petition. This impermissible and interminable suspension of Awad's habeas rights must end now by the immediate lifting of the stay in this proceeding.

### III. COUNSEL MUST BE GIVEN ACCESS TO AWAD'S MEDICAL RECORDS

Petitioner suffers from severe and unresolved physical conditions including a severed leg, an improperly fitted prosthetic leg, untreated back and joint problems, and deteriorating eyesight. *See* Declaration of Panayiota G. Souras ("Souras Decl."), ¶¶ 5-8. Awad has told counsel on recent visits that he has received inadequate healthcare and suffers from painful and untreated physical ailments. *Id.* The government has not provided counsel with Awad's medical records or any information regarding his physical condition or the medical treatment he may have

received or needed since he has been at Guantanamo. Souras Decl. ¶4. Counsel must obtain access to Petitioner's medical records to ensure he is receiving proper medical treatment and to evaluate his physical and mental condition.

When Petitioner arrived at Guantanamo over four years ago, he was suffering from an extremely serious open leg wound. Souras Decl. ¶5. Counsel has learned from Petitioner that his leg wound remained untreated for over a year causing him extreme pain, discomfort, and difficulty in basic physical movements. *Id.* At some point after his first year at Guantanamo, it was determined that his leg wound was so serious that amputation was necessary. *Id.* Petitioner told counsel that doctors amputated more of his leg than he had been advised initially would be removed. *Id.* According to Petitioner, after his leg was amputated, he did not receive any sort of prosthetic leg for over three years. *Id.* at ¶6. Finally, just one year ago, he received a prosthetic leg, but it is the wrong length. *Id.* As a result of the inappropriately sized prosthetic leg, Petitioner is imbalanced when he stands or walks. *Id.* This condition may have contributed to the unresolved and untreated back and joint pain that Petitioner suffers. *Id.* In addition, Petitioner's eyesight has deteriorated to the point where he can only read when holding materials close to his face. *Id.* at ¶7. According to Petitioner, the medical staff at Guantanamo gave him a pair of eyeglasses, but they provide him no relief and he was told there was no other treatment available for his eyes. *Id.*

Counsel has no manner in which to objectively evaluate the medical treatment Petitioner has needed or may have received since he has been confined at Guantanamo. From discussions with Petitioner however, it seems apparent that the medical treatment he has received has been deficient, slow, and wholly inadequate.

While Respondents' counsel likely will argue that the medical care provided to detainees at Guantanamo is more than adequate, such general statements provided by clearly self-interested parties are of no help to Petitioner in obtaining proper and necessary medical treatment. In order to ensure Petitioner receives proper medical treatment, counsel requires access to his records. Further, there is no basis for denying counsel access to Petitioner's medical records. In fact, this Court has previously ordered the government to provide counsel with medical records. *Al-Joudi et al. v. Bush et. al.*, No. Civ. A. 05-301 (GK), 406 F. Supp. 2d. 13, 23 (D.D.C. 2005); see also *id.* at 21-22 (finding that to effectively represent Petitioners, counsel must have access to Petitioner, and "must be made aware if their clients are in such fragile physical condition that their future ability to communicate is in imminent danger."). For counsel to be properly informed of their client's physical condition, access to medical records must be granted. From counsel visits, counsel has seen how frail Petitioner is and how the improperly fitted prosthetic could cause an uneven and debilitating gait. To best represent Petitioner, an independent means to assess Petitioner's medical condition is required including access to Petitioner's medical records.

The government will incur no negative effect by providing counsel with Petitioner's medical records. As noted by Dr. Scotti, a retired Major General with 31 years of experience as a doctor in the U.S. Army, in briefing on this issue in another case: "In order to assess whether the management and standard of care of the patient is appropriate, it is necessary to have access to the patient's medical records. From a military perspective and based on my experience, I cannot see how providing access to those medical records to the patient's family, the patient's legal representatives and agents, and the court implicates or raises concerns of a security nature." Declaration of Michael J. Scottie, Jr. M.D. ¶ 12 ("Scotti Decl."), dated October 17, 2005, filed in

support of *Al Odah v. United States*, No. CV 02-0828 (CKK), Plaintiffs-Petitioner's Motion for Preliminary Injunction to Compel Defendants-Respondents to Provide Access to Medical Records, Timely Reports, and Direct Communications with Family Members Regarding Two Force-Fed Plaintiffs-Petitioners Who Are in Danger of Dying, and Request for Expedited Consideration.

Additionally, Petitioner indicated to counsel during their last visit that he wished counsel to have access to his medical records. Souras Decl. ¶4. Given the difficulty in communicating with any detainee at Guantanamo, counsel must have actual access to Petitioner's medical records to make informed decisions in representing Petitioner. There is no basis for the Government denying counsel access to Petitioner's medical records.

## IV. PETITIONER MUST BE GRANTED INDEPENDENT PHYSICAL AND MENTAL HEALTH EXAMINATIONS

In addition to obtaining access to Petitioner's medical records, counsel requests that they be permitted to arrange an independent physical and mental health examination for Petitioner. Petitioner's indefinite detention at Guantanamo, with no personal contact with friends or family and no knowledge if or when he ever will be accorded a full and fair trial on whatever charges the United States may make against him clearly has been mentally draining and exhausting and has taken its toll on Petitioner's mental health. During the most recent counsel visit, Petitioner showed indications of mental instability and irrationality. Souras Decl. ¶8. He has expressed a lack of hope for his future and irrational and unexplained isolationist tendencies. *Id.* The government has provided counsel with no information regarding Petitioner's mental condition. To best represent Petitioner's interests, counsel requires an independent mental health examination so that his mental state can be evaluated and treated as needed.

In recent briefing seeking to justify their seizure and review of attorney-client materials, Respondents raised the issue of the detainees' mental health and the measures they sought to undertake to ensure the future safety of the detainees. Perhaps the best way to ensure the future safety of the detainees, and particularly detainees such as Awad who exhibit unresolved and untreated physical and mental difficulties, is to enable counsel to arrange independent physical and mental health examinations. Given the complete inaction in these cases, and the continued, unrelenting confinement of Awad, counsel must be given access to Awad's medical records and be permitted to arrange independent health examinations in order to preserve Petitioner's life and mental well-being.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant this motion for immediate issuance of the factual return, lifting of the stay in this case, ordering Respondents to deliver Petitioner's medical records to counsel, and requiring Respondents to permit Petitioner to have an independent physical and mental health examination.

Dated: September 22, 2006

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

_____
Panayiota G. Souras (pursuant to LCvR 83.2(g))
Washington Harbour
3050 K Street, N.W., Suite 200
Washington, D.C. 20007
(202) 339-8400
(202) 339-8500 (fax)

Counsel for Petitioner

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of September, 2006, I served the foregoing on the counsel listed below by this Court's Electronic Case Filing ("ECF") system.

Preeya M. Noronha, Esquire
Terry M. Henry, Esquire
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7144
Washington, D.C. 20530
Tel: (202) 514-4107
Fax: (202) 616-8470

*Counsel for Respondents*

[signature]
Panayiota G. Souras