IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| IN RE: | ) | Misc. No. 08-442 (TFH) |
| | ) | |
| GUANTANAMO BAY DETAINEE LITIGATION | ) | Civil Action Nos. |
| | ) | |
| | ) | 02-CV-0828, 04-CV-1164, 04-CV-1194, 04-CV-1254, |
| | ) | 04-CV-2022, 04-CV-2046, 05-CV-0023, 05-CV-0247, |
| MOTION RELATES TO MOTION OF RESPONDENTS FILED ON 12/29/2008 | ) | 05-CV-0270, 05-CV-0280, 05-CV-0329, 05-CV-0359, |
| | ) | 05-CV-0392, 05-CV-0492, 05-CV-0520, 05-CV-0526, |
| | ) | 05-CV-0634, 05-CV-0748, 05-CV-0763, 05-CV-0764, |
| | ) | 05-CV-0877, 05-CV-0883, 05-CV-0889, 05-CV-0892, |
| | ) | 05-CV-0993, 05-CV-0998, 05-CV-1124, 05-CV-1189, |
| | ) | 05-CV-1220, 05-CV-1244, 05-CV-1347, 05-CV-1353, |
| | ) | 05-CV-1429, 05-CV-1457, 05-CV-1487, 05-CV-1490, |
| | ) | 05-CV-1497, 05-CV-1504, 05-CV-1506, 05-CV-1555, |
| | ) | 05-CV-1592, 05-CV-1601, 05-CV-1607, 05-CV-1623, |
| | ) | 05-CV-1638, 05-CV-1645, 05-CV-1646, 05-CV-1678, |
| | ) | 05-CV-1971, 05-CV-1983, 05-CV-2104, 05-CV-2185, |
| | ) | 05-CV-2186, 05-CV-2199, 05-CV-2249, 05-CV-2367, |
| | ) | 05-CV-2378, 05-CV-2379, 05-CV-2380, 05-CV-2384, |
| | ) | 05-CV-2385, 05-CV-2386, 05-CV-2387, 05-CV-2479, |
| | ) | 06-CV-1668, 06-CV-1684, 06-CV-1690, 06-CV-1758, |
| | ) | 06-CV-1761, 06-CV-1767, 07-CV-1710, 07-CV-2338, |
| | ) | 08-CV-0987, 08-CV-1101, 08-CV-1104, 08-CV-1153, |
| | ) | 08-CV-1221, 08-CV-1224, 08-CV-1228, 08-CV-1232, |
| | ) | 08-CV-1233, 08-CV-1235, 08-CV-1236, 08-CV-1238, |
| | ) | 08-CV-1360, 08-CV-1440, 08-CV-1789, 08-CV-1805, |
| | ) | 08-CV-1828, 08-CV-1923, 08-CV-2019 |

**PRESS APPLICANTS' REPLY MEMORANDUM**

The Associated Press, The New York Times Company, and USA Today (collectively, "Press Applicants") respectfully submit this reply memorandum in further support of their application to intervene for the purpose of enforcing the rights of public access to the records of these habeas proceedings.

**PRELIMINARY STATEMENT**

In opposing Press Applicants' effort to enforce the right of public access to *unclassified* information in court records, the Government makes no attempt to demonstrate that the settled standards for overcoming access rights have been met. It contends instead that there is no reason for intervention because the public has no right at all to inspect court records that purport to justify the indefinite detention of individuals who have never been charged with a crime. The Government roots its position in the remarkable claims that the constitutional right of access extends *only* to criminal proceedings, and that neither a constitutional nor a common law right of access extends to habeas proceedings because they are not criminal in nature. Each of these claims has previously been rejected—uniformly—by every court to have squarely addressed it, in decisions the Government either overlooks or affirmatively misstates. The constitutional right of access *does* extend to civil proceedings and specifically to habeas proceedings as well, whether such proceedings are properly characterized as "civil" or not.

The Government apparently seeks to justify its sweeping rejection of established access rights with the assertion that these particular habeas proceedings "involve the most sensitive of information, some of which is classified, and they also concern persons that are adversaries of the United States" (Opp. at 5)—a claim that confuses the analysis to determine the *existence* of the access right with the standard by which it may be *overcome* in a particular instance. The Press Applicants have no dispute with the Government's right to protect information critical to our national defense, even when that information must necessarily be submitted to a court. But the Government is wrong to claim that the public has no right of access to any records filed in habeas proceedings, and to refuse to make any showing to justify its request to prolong indefinitely the complete sealing of all factual returns filed in these important cases.

Whether the Government's responses to the Guantanamo habeas petitions are subject to a right of access and, if so, whether specific information within them may nonetheless be kept from the public, are questions of great significance.  As demonstrated in Press Applicants' initial memorandum, well established legal standards govern how these questions are to be answered, and the Government's opposition woefully fails to demonstrate that those standards have been satisfied here.  Indeed, the opposition does not even address the central claim advanced by the Press Applicants:  That no justification exists for the Government to impose secrecy over *unclassified* information in court records for an *unlimited* period of time.

The Government's opposition to Press Applicants' submission misstates the relief requested and the controlling law.  The Press Applicants do *not* seek access to classified information, this Circuit has *not* held that the constitutional right of access applies only to criminal proceedings, and the Government's opposition fails completely to justify its request to keep unclassified information under seal indefinitely.

## ARGUMENT

### I.
### THE PUBLIC'S RIGHT TO INSPECT THE RECORDS OF THESE PROCEEDINGS IS PROTECTED UNDER BOTH THE CONSTITUTION AND THE COMMON LAW

Whether characterized as civil or criminal proceedings, courts repeatedly have found habeas proceedings to be subject to the right of public access. E.g., *Osband v. Ayers*, 2007 WL 3096113, at *2-3 (E.D. Cal. Oct. 22, 2007) (recognizing that the First Amendment access right applies to habeas proceedings); *Ramirez v. Attorney Gen. of the State of New York*, 1999 WL 1059966, at *1-2 (S.D.N.Y. Nov. 22, 1999) (recognizing right of access to habeas proceedings). *Cf. In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661-63 (8th Cir. 1983)  (access to contempt proceeding justified on grounds that it was a "hybrid containing both civil and criminal

3

characteristics"). We know of no case that has held that the public access right does not apply to a habeas proceeding, as the Government now urges this court to do. Every step of the Government's argument is seriously flawed, and its conclusion is flatly incorrect.

### A. The First Amendment Right of Access Extends To the Records Filed In These *Habeas* Proceedings

1.  The Government urges that the "right of access to judicial proceedings is confined to criminal proceedings" (Opp. at 2), representing this to be the law of this Circuit. According to the Government: "The Court of Appeals for this Circuit has *held* that the qualified First Amendment right of access to judicial proceedings applies only to criminal proceedings and does not extend to civil proceedings." *Id*. According to the Government, this limitation is settled by "established precedent," which it describes as "sound and *unambiguous*." *Id.* at 4, 6 (emphasis added). The claim is baseless. The D.C. Circuit has never rejected the right of access to civil proceedings, let alone through "unambiguous precedent."

The Government improperly cites *dicta* from a Freedom of Information Act (FOIA) case, *Center for National Security Studies v. United States Department of Justice*, 331 F.3d 918 (D.C. Cir. 2003), which holds that the First Amendment access right does not extend to *non-judicial* documents in the possession of the Executive branch (Department of Justice materials concerning individuals arrested for immigration violations), access to which the court found to be governed solely by FOIA.[1] Neither *Center for National Security Studies* nor any other decision by the D.C. Circuit holds that the constitutional right of access is confined to criminal cases. The "established precedent" repeatedly invoked by the Government does not exist.

---

[1] The *dicta* in *Center for National Security Studies* notes only that the few Supreme Court cases to have addressed the scope of the constitutional right of access all arose in the context of criminal prosecutions. *Flynt v. Rumsfeld*, 355 F.3d 697 (D.C. Cir. 2004), also cited by the Government (Opp. at 3), rejected a First Amendment right to be "embedded" with military units on the field of battle. Neither case decided the right of access to civil judicial proceedings.

2.     Nor is the Government correct in claiming that the Supreme Court holds its "narrower view" of the access right. Opp. at 3. While the only access cases that have reached the Court involved criminal prosecutions, nothing in the Supreme Court's holdings or rationale limits the right to criminal proceedings. To the contrary, in addressing the right to attend a criminal trial in *Richmond Newspapers v. Virginia*, the plurality opinion by Justice Burger went out of its way to disapprove the very limitation urged by the Government here:

> Whether the public has a right to attend trials of civil cases is a question not raised by this case, but we note that historically both civil and criminal trials have been presumptively open.

448 U.S. 555, 580 n.17 (1980); *see also id.* at 599 (constitutional right extends to trials, "civil as well as criminal") (Stewart, J. concurring).[2] The Government's contention that the same access standard does not apply in civil lawsuits is so plainly incorrect that it has been uniformly rejected by *every* Court of Appeals to have addressed it. *See, e.g.*, *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067-71 (3d Cir. 1984); *Westmoreland v. CBS*, 752 F.2d 16, 22-23 (2d Cir. 1984); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178-79 (6th Cir. 1983).

3.     The unstated premise of the Government's argument—that these habeas proceedings should somehow be deemed "civil" in nature—is equally off base and fails "to take

---

[2] Indeed, to limit the access right to criminal proceedings would miss the point of the Court's First Amendment analysis altogether. The Court's "experience and logic" approach looks at whether a *type* of judicial proceeding or record has "historically been open to the press and general public," and whether "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8-10 (1986) ("*Press-Enterprise II*"). Civil proceedings plainly satisfy this test. Civil lawsuits have a history of openness that parallels precisely that of criminal proceedings. *See Richmond Newspapers*, 448 U.S. at 580. Similarly, each of the policy reasons the Supreme Court identified for protecting access to criminal proceedings applies fully to civil cases. *See, e.g.*, *Press-Enterprise II*, 478 U.S. at 12-14; *Richmond Newspapers*, 448 U.S. at 569-572.

into account the stakes involved." *O'Neal v. McAninch*, 513 U.S. 432, 440 (1995); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("traditional function of the [habeas] writ is to secure release from illegal custody"). Although habeas proceedings are nominally denominated "civil actions" on the dockets of this and other courts, such proceedings challenging confinement under the circumstances presented here are not "civil actions" in the typical sense. *Harris v. Nelson*, 394 U.S. 286, 293-94 (1969) (while habeas proceedings generally are characterized as "civil," that "label is gross and inexact" because "the proceeding is unique"); *see also Blair-Bey v. Quick,* 151 F.3d 1036, 1039 (D.C. Cir. 1998) (citing cases). Rather, they take on the criminal characteristics of the underlying grounds for detention. *Blair-Bey*, 151 F.3d at 1039 (habeas proceedings are "'functional continuations of the criminal prosecution'") (citation omitted). *See also Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983) (constitutional access right must extend to proceedings "which pertain to the release or incarceration of prisoners and the conditions of their confinement").

      4.      Without citing a single case rejecting the right of access to habeas proceedings, the Government argues that there is no tradition of access and no policy reason to favor access to habeas proceedings "*for review of enemy combatant status*." Opp. at 6-7 (emphasis added). The claim conflates two issues—whether the right *exists* in habeas proceedings and whether it is *overcome* in these specific cases. The relevant focus is not on the subject matter of a proceeding, but whether the type of proceeding—here a habeas corpus proceeding—historically has been open and is benefitted by public access. *See Richmond Newspapers*, 448 U.S. at 566-68 (analyzing history and policy governing access to criminal trial without regard to nature of the charges); *Press-Enterprise II*, 478 U.S. at 10-15 (analyzing the procedures used in pre-trial hearings without regard to the substance of those hearings). The Government's citation (Opp. at

6) to *United States v. El-Sayegh*, 131 F.3d 158 (D.C. Cir 1997), is thus completely inapposite. There *is* a tradition of openness to habeas proceedings, regardless of whether this type of proceeding previously has been available to alien detainees.[3]

5. Similarly, to determine whether the constitutional access right extends to particular court records filed in connection with a case, the proper question is whether the *type* of court record at issue is subject to the right of access, and pleadings such as the Government's responses to the habeas petitions here plainly are. *See, e.g.*, *In re North*, 21 F.3d 434, 435-36 (D.C. Cir. 1994) (all pleadings, motions and submissions); *United States v. Smith,* 776 F.2d 1104, 1111 (3d Cir. 1985) (bill of particulars); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 124 (2d Cir. 2006) (summary judgment motion); *Rushford*, 846 F.2d at 253 (same); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d at 1308-09 (documents submitted in support of motions); *Assoc. Press v. U.S. Dist. Court*, 705 F.2d 1143, 1145 (9th Cir. 1983) ("public and press have a first amendment right of access to pretrial documents in general"); *In re Food Mgmt. Group, LLC*, 359 B.R. 543, 552-53 (Bankr. S.D.N.Y. 2007) (complaint); *United States v. Giordano*, 158 F. Supp. 2d 242, 244 (D. Conn. 2001) (criminal complaint and supporting affidavits). The Government's arguments about the potential adverse impact of releasing specific information from the factual returns is relevant

---

[3] The suggestion that anything in *North Jersey Media Group, Inc. v. Ashcroft*, 308 F.3d 198 (3d Cir. 2002) supports a lack of historic openness for all "proceedings that relate to aliens who are not in the United States" is entirely misdirected. Opp. at 6. That case addressed deportation proceedings conducted by the Executive Branch, not judicial proceedings in Article III courts, and it makes no such sweeping claim.

To the extent that deportation cases are relevant at all, 8 C.F.R. § 1240.48(a) provides that "[d]eportation hearings *shall* be open to the public," but grants discretion to close a proceeding for the protection of individuals or the public interest. 8 C.F.R. § 1003.27. Consistent with these regulations, deportation hearings "traditionally have been accessible to the public." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 700-01 (6th Cir. 2002). *Accord Pechter v. Lyons*, 441 F. Supp. 115, 119-20 (S.D.N.Y. 1977) (finding abuse of discretion in denying public access to deportation proceedings).

only to the distinct assessment of whether the right is *overcome* in certain instances, not whether the right of access *exists*. *See* Press Apps.' Opp. to Govt.'s Mot. at 11-13; *see also infra* at 9-11.

**B.   The Common Law Right of Access Extends to
The Records Filed in These *Habeas* Proceedings**

1.   The Government is on no firmer ground in arguing that the common law right of access does not extend to "judicial records . . . in these *habeas corpus* proceedings." Opp. at 2. As Press Applicants established in their opening memorandum, the public's common law right to inspect court records is "indisputable." Press Apps.' Opp. to Govt.'s Mot. at 7 (quoting *In re Nat'l Broad. Co.*, 653 F.2d 609, 612 (D.C. Cir. 1981)); *see also* Press Apps.' Opp. to Govt.'s Mot. at 7-9. This right unambiguously extends to records of habeas proceedings. *Wiant v. U.S.*, 2005 WL 1651716, at *3-4 (S.D. Ohio July 11, 2005 ) (holding that common law right of access outweighed petitioner's request to seal habeas proceedings); *accord Ashworth v. Bagley*, 351 F. Supp. 2d 786, 788-92 (S.D. Ohio 2005) (applying common law access right to reject request to seal competency reports). Indeed, the Government itself concedes as much when it recognizes that the "common law creates a qualified right of access to public records in general . . . ." Opp. at 9.

2.   The Government argues nonetheless that no common law right should be recognized here because the "public release of the totality of the unclassified factual returns is not essential to the functioning of the judicial process" (Opp. at 9), but that is not the standard. Rather, in this Circuit, "what makes a document a judicial record and subjects it to the common law right of access is the role it plays in the adjudicatory process." *El-Sayegh*, 131 F.3d at 163. As the D.C. Circuit has observed, "the meaning and legal import of a judicial decision is a function of the record upon which it was rendered." *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 906 (D.C. Cir. 1996). Here, the Government is required by statute to

produce the factual returns "certifying the true cause of the detention" so as to enable the Court to "hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243. The returns summarize the bases for a petitioner's detention, and thus necessarily will be considered by the Court in determining the legality of that detention. *See* Press Apps.' Opp. to Govt.'s Mot. at 9. Under these circumstances, there can be no serious dispute that the factual returns play a vital role in these habeas proceedings and thus fall within the ambit of the common law right of access to judicial records, as well as the constitutional right.

## II.
## THE GOVERNMENT FAILS EVEN TO ATTEMPT TO MEET ITS BURDEN TO JUSTIFY THE OPEN-ENDED SECRECY IT SEEKS TO IMPOSE OVER THE COURT'S RECORDS

1.  The Government completely sidesteps its obligation to demonstrate both a compelling interest in keeping the factual returns secret and that its proposed restriction on access is narrowly tailored. *See* Press Apps.' Opp. to Govt.'s Mot. at 11-13. Instead, the Government argues that the public has no right of access to *classified* information (*e.g.*, Opp. at 8), purposefully ignoring that Press Applicants challenge the Government's effort to withhold *unclassified* documents for an open-ended period.[4] The Government has no answer to the precedent of this Circuit requiring more than simply "generic assertions of the need to protect information" to support the sealing of judicial records. *See* Press Apps.' Opp. to Govt.'s Mot. at 15 (quoting *Parhat v. Gates*, 532 F.3d 834, 852-53 (D.C. Cir. 2008)). For this reason alone, the Court should reject its overly broad request to keep the returns sealed in their entirety.

---

[4] The Court plainly has a role to play in ensuring that only properly classified information is withheld from the public file. *Cf. Ray v. Turner*, 587 F.2d 1187, 1194 (D.C. Cir. 1978) (in adopting FOIA Congress "insisted that judges could be trusted to approach the national security determinations with common sense"). That issue, however, is not before the Court on the pending motions.

      2.      Portraying its motion as seeking "limited" relief, the Government states that it has simply asked the Court for "sufficient time for Respondents to complete the declassification review of the returns and, ultimately, preparation of a declassified version of the returns for filing on the public record." Opp. at 11. But the Government makes no commitment to accomplish this review within a specific time frame, and asks for open-ended and unlimited sealing of all the returns in their entirety. The Government's proposed relief is not a narrowly tailored restriction on the right of access, and should be rejected for this reason too.

      3.      The Government only obfuscates the issue in asserting that "the Court . . . through the mechanism of the Protective Order and by its control of the litigation supervises to the degree appropriate the issue of whether information is being improperly withheld from the public record," and by pointing to the Protective Order's requirement that the parties "[file] appropriately redacted Court submissions." Opp. at 5. According to the Government, "[t]he goal of the public's reasonable access to these proceedings is being met." *Id*. at 6. Apart from the effective concession in this argument that the public is entitled to *some* form of access, the Government simply glosses over two critical points: First, the Protective Order itself contemplates a procedure by which the Government must make a showing to justify the continued sealing of the factual returns, but the Government has made no such showing. *See* Press Apps.' Opp. to Govt.'s Mot. at 14-16. Second, the Protective Order requires the parties to *file* properly redacted versions, thereby contemplating that the public will have access to those documents, but that is precisely what the Government seeks to prevent.[5] The Government's

---

[5] As previously noted (Press Apps.' Opp. to Govt.'s Mot. at 16 n.6), the Protective Order specifically requires that whenever the Government files under seal a document containing classified information, it must "file in the CM/ECF system a version of the pleading or document appropriate for filing on the public record" and must do so "*as soon as practicable following the original filing date*." Protective Order ¶ 48a. (emphasis added). The Government has also been

argument about the significance of procedures in the Protective Order is completely circular, and fails to advance its position one whit.

## CONCLUSION

For all the foregoing reasons, the Government's motion to keep unclassified information in court records under seal indefinitely should be denied.

Dated: February 9, 2009

                Respectfully submitted,

                LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

                By:_____/s/ Jeanette M. Bead_____
                    David A. Schulz, DC Bar No. 459197
                    Jeanette M. Bead, DC Bar No. 480539

                1050 Seventeenth Street, NW
                Suite 800
                Washington, DC 20036-5514
                Phone (202) 508-1100
                Fax (202) 861-9888

                *Counsel for Press Applicants*

*Of Counsel*:

David E. McCraw
The New York Times Company
620 Eighth Avenue
New York, NY 10018

David H. Tomlin
Associated Press
450 West 33rd Street
New York, NY 10001

Barbara L. Wall
Gannett Co., Inc.
7950 Jones Branch Drive
McLean, Virginia 22101

---

specifically ordered to file an unclassified version of each factual return appropriate for public disclosure (*see* November 6, 2008 Order, Dkt. No. 940, at 2), but seeks through its motion to circumvent this requirement indefinitely.

11